All rise. Please be seated. Morning. As you can see, we are missing a justice this morning. Justice Chapman was supposed to join us and she was unable to do so. So, not out of disrespect to you all, but she will be able to listen to these arguments via audio recording as they are available to all litigants. So, with that, we will proceed with the next case on the docket, which is Holmes v. Addison Insurance Co. Mr. Doris. Good morning. Good morning. I am indeed Doug Doris, Howard Doris, Stone, Lambert, Leary, and I represent the plaintiff, Austin Holmes, for the appellant in the case. Your Honors, allow me at the beginning to start by violating one of the principles of oral argument, which is backing into my case by acknowledging my opponent's position and addressing that first. But I think in doing that, I think I'll be able to narrow down the focus of what this appeal is really about. Despite all the efforts of Addison, this is not a case about whether Ryan Anderson, who was a young man driving a truck owned by his father, who was the president of Anderson Trust in Pittsburgh, Illinois. The trust was owned by the dad, not by the company. It was a non-owned vehicle under the policy. The young man was coming home from a church service on Sunday afternoon. He was not involved at work. He was not doing anything in the course of the appointment. He failed to see vehicles stopped in front of him. He ricocheted off the back of those vehicles, caroled into the other lane, and hit my client head-on, tremendous physical injuries, hospitalized in Chicago for a long period of time, medical bills over a million dollars. Anderson, we made a claim against Anderson, against Addison, for coverage of that young man. Addison is arguing and basically trying to posture this into a responding on a superior case. In other words, they're trying to make this case into a situation where we have to prove that this young man was in the course of his employment with Anderson Trust at the time of the reference of no coverage. This is an argument and a posture which Judge Weyer at the trial court level embraced and found specifically that there was no coverage because he found that the evidence was insufficient to show that Ryan Anderson was employed and in the course of his employment at the time of the wreck. That is not an argument. This is not a responding on a superior case. It's not a case based on a lot of case law cited by them that relies on responding on superior theories. This is a purely coverage case. We are arguing that Ryan Anderson is not an employee. We're arguing that he's covered under the policy. And, okay, do you have to show that Ryan Anderson was an insured? Is he the defendant in the underlying case? I mean, as I read their argument, their argument is that they have an obligation under the policy if someone's injured by an insured operating a covered auto. And let's accept everything you argue about covered auto. Their argument is you haven't shown that he was an insured. My argument is that he is an insured, Your Honor. Okay, and that's what I really want to hear from you. Your Honor, it's purely a coverage case. It's purely a case where you read the coverage language of the policy and determine whether he fits under the facts of the policy. It's purely a case where the court simply steps back, de novo, reads this insurance policy and says under the language of the policy is there coverage. Now, I could have set up a PowerPoint presentation and brought in a guy who advises and all that. But with the leave of court and permission of court, I simply, you've got it all in the brief many times. But I view it as just a sheet of paper. And I suppose it's also a sheet of paper as well. But the whole case boils down to the reading of this clause. This is a lawsuit in which Addison Insurance has provided to Anderson Trust a policy that says we will cover you under certain circumstances. An express circumstance is we will cover non-owned vehicles. Obviously, Addison drafts this policy. We don't. This is Addison's language. The language, if you concentrate on this box, and by the way, I think Addison in the brief tries to morph into this box other parts of the policy which have to do with owned vehicles. The only language that pertains to a non-owned vehicle is this box right here. It's a symbol nine. It's the kind of policy that says, you know, you have coverage, at least similarly shown. Symbol nine. Here it is. Not owned vehicle. Here's the only language. Only those vehicles you do not own lease, hire, rent, borrow. Clearly, the truck owned by Dad is not owned by the corporation, Anderson Trust. That's not – there's no dispute about that whatsoever. The – this box, the first sentence says these non-owned vehicles that are used in connection with your business. Now, I'm telling the court, if that box would stop right there, I lose. I lose all day long. I'm back in Marion, Illinois, drafting motions opposing sanctions for failure to provide discovery or something on my part. But it doesn't end right there. The next sentence says this includes all those owned by your employees, partners, if you are a partnership, members, if you are an LLC, or members of their household. So, clearly, this goes beyond just the insured. It talks about the decision-makers of the insured. Mr. Joris, let me interrupt you a second. Sure. The you in this is Addison, right? Correct. In this box, the employee is the father. Ryan. I'm sorry, Lloyd. Lloyd, right. I'm sorry. And while used in your business or your personal affairs, it seems to me the issue is in this box, what is a personal affair? That's the whole case, Your Honor. Okay. Now, Justice Stewart asked you about the insured coverage, which is any employee of yours while acting in the course of your business. So, an insured now is defined as an employee. So, it seems that what this giveth, the other taketh away. Is Lloyd Anderson an employee? He's the president of the company. Well, it says. Okay. That's good. Thank you. Your Honor, that's a good point. But if you'll notice that second sentence starts with this includes. Right. But the coverage question that Justice Stewart asked you about originally talks about the sums the insured is legally obligated to pay resulting from the ownership, maintenance, or use of a covered automobile. And then there was an amendment to that. I agree. I agree, Your Honor. But the insured. But it uses personal affairs as well. I'm sorry. I didn't. It uses the coverage section. It uses personal affairs. All right. But it says you do not own, hire, or borrow. So, it would also come. Your position is that the coverage would come within the box case. Your Honor, this is broad coverage. It is. It is, in my opinion, a very poorly, ambiguously worded clause. Like I said, if they would have stopped after the first sentence, that sentence is right, used in connection with the business. The second sentence. Let me just stop you there and ask, are you backing off your argument about the decal? No, that's. Because it seems to me like if the decal means that it was used in connection with the business, then at the end of the first sentence you're still. I'm still on the hunt on issue two. I agree. And that was going to be the second part of my argument. But I'll say it right now. I'll say it right now. That's okay. I just wanted to make sure you weren't giving up. No, I'll go ahead and make that because that was going to be the short part of the argument. And you brought it up. And the right thing to do is address it. In connection with language, it is the decal question. And there are cases that talk about a little sticker like St. Mary in Florida, Monterey Gulls or something like that. But that's not probably out of the country. But the issue in that case, in issue two, is whether in connection with includes advertising. And as I say in the brief, you can ask any attorney, smiling disingenuously down from the billboards all up and down the highways, whether advertising is in connection with their business. I thought that was very cute. I guess my point, though, is you don't even have to get to this thing about personal affairs if it's a covered auto because it's used in connection with the business because of the decal, right? That's exactly right. But that's issue two. Now, the Wolfenberger case, which they rely on, that's the drunk in 330 in the morning and everybody out having a good time, closing down bars because they were encouraged to do that. I have to say this as an officer of the court. If you read that case all the way through that, that is the case. The court ultimately said, you know, whether they were encouraged to the extent they were encouraged, probably question the fact that it all went back. And they did send it back on summary judgment. That's really a question of fact. Whether that sign on the back blazing in the back window of the truck, whether that's in connection with might be a question of fact that might have to go back on that issue. But I think the personal affairs is a question of law. It's being done alone. And I think we win on that. But Wolfenberger was a scope of employment. It was. I don't. Where in the language is this? Do we talk about scope of employment? I don't know. That's that's why I backed into the argument. This is not a scope of employment case. This is a coverage case. In all the cases, all the virtually every case they shot in all the old cases in this area, everybody seems to stop again on the scope of employment. Even the plaintiffs in those cases don't come in and say, this is just confusing language. Now, here's why it's confusing. I'm sorry, but let me ask another question. You're saying this is a coverage case. I agree with you. And I'm going to restate what I understand to be your opponent's argument. Okay. Under section two, liability coverage, subsection eight, entitled coverage, it says we will pay all sums and insured. Legally must pay as damages because of bodily injury, blah, blah, blah, caused by an accident and resulting from the ownership, maintenance, or use of a covered auto. Now, your opponent says that means there have to be two things shown for coverage. One is it's a covered auto. The other one is operated by an insured. Okay. Now, let's say we agree with everything you say about subsection nine, and this is a covered auto. Okay. Tell me how Ryan is an insured. I will. Non-owned, of course, is a kind of covered auto. And insured isn't just the name of insured. It's anyone covered under the policy. And there's a defined, there's a definition of that. Well, obviously, the policy has to be read as a whole. When this clause starts talking about employees and household members using things not used in business and your personal affairs, but used in business for your personal affairs, I've got a president of the corporation who's an employee of the corporation, not Ryan, but boy, the dad. I've got him allowing a non-owned vehicle to be used for his personal use, i.e., their children are driving this truck. And we've got the son, who is a household member, who is driving the truck for his personal use. Okay. So I can read that reasonably to me. It seems to me like your opponent is arguing based on the definition of insured. And Judge Beyer ruled based on the definition of insured. That's where we've got the whole employee thing involved here. If he had been an employee, then that makes him an insured under the definition of the policy. Now, let me see if I can restate your argument and make sure I understand if I've got this right. You're saying that this definition of non-owned auto is ambiguous. And that ambiguity would lead a reasonable person to believe simply by reading that part that if it fits in that definition, it's covered, forget about the idea of insured or whatever. Because you've got household members. That's right. Okay. You're saying a person could read this and say, if I'm a household member, I'm an insured. I think they have to read it that way. There is no definition in the policy of what your personal affairs mean. They argue, and they cite cases that have said, because there are opposing cases in other jurisdictions. It says your personal affairs mean the course of business. That's contradictory. That's nonsensical. Even the United States Supreme Court said corporations don't have personal affairs. And basically, it comes down to these coverage questions, as they always do. The insurance company has written language that they're trying to restrict coverage, and they've written a sloppy policy or they've written a policy that's hard to understand, and they're asking the court to clean up their policy in which they're trying to prohibit the coverage. I'm saying that a reasonable layman, because there is no definition in the policy of personal affairs, can certainly read this that when the president of the company lets a household member drive a non-owned vehicle for his pleasure, that's a personal affair. And it doesn't have to be a personal affair in the course of business. So just to make sure I still understand, you're not making any argument that Ryan fits under the policy definition of insured. You're saying that reading this, it's an ambiguity, and a reasonable person would read that and say, I'm covered if these facts fit. Okay. Let's wait until you get up here to the podium, because it records from there. I am Mr. Miller. I am Mr. Miller, spelled R-W-E-L-L-E-R. I am representing Addison in this case. We have a fundamental difference of opinion and disagreement with my colleague who represents the Holmes family. I think that Justice Stewart hit the nail on the head and that the questioning was perceptive, and I think the answer was illuminating, that counsel is attempting to bootstrap coverage for Ryan Anderson, the son of Boyd Anderson, the owner of the vehicle, solely based upon the definition of non-owned autos under symbol number 9 of the policy. I think that counsel has admitted and they conceded, as indeed he must, that Ryan Anderson, who is the defendant in the case, and upon whom coverage must focus, is not an insured within any definition of insured under the definitions of who is an insured in the policy. Let me ask you about that, Mr. Miller. Under Section 2A.1, it says who is an insured, and it goes the following are insured. A. You for any covered auto. Now, that's before we ever get to employees or anything like that. Just the words, you for any covered auto. Would you agree that the words covered auto now shift you to the declaration page, which involves the subparagraph 9? Certainly. Okay. So, we're talking about the insured section that you just referenced. If we agree that you means as an insurance company, you for any covered auto would then take us automatically to the reading of this section, right? Well, that's where we're going. Okay. So, why is Mr. Doris wrong that we should now look to Section 9 for the definition of whether Ryan is indeed someone who's covered, an insured? Because an insured is defined under Section 1, as the Court indicated, you refers to the name insured, you being Anderson Trust Company. It says you for any covered auto. Yes, Anderson Trust Company for any covered auto, not Ryan Anderson. No, but they're suing the insurance company, aren't they? Well, Ryan is the named person because. Well, Ryan is covered under the policy with State Farm that his father had on the Dodge Ram. They are trying to manufacture coverage under the corporation's policy, under the Anderson Trust's policy, by claiming that this is a covered auto because it is non-owned. That doesn't get them. A bird can't fly on one wing, and they've got to have both a covered auto and they've got to have an insured by definition. An insured is not anyone who would be driving a non-owned auto. When did you see that in the policy? What? When you said you, it's not someone driving a non-owned auto. It's not anyone driving a non-owned auto. It has to be Anderson Trust Company, the named insured, because the insuring agreement says we will pay all sums, an insured. Their liability is limited to paying for the exposure of an insured and defending an insured. If you want to see who is an insured under the policy, then you look at the definition of who is an insured. And the definition for who is an insured is the corporation, if it is a covered auto, and that would include non-owned autos, and it would be a permissive user using an auto, you being Anderson Trust Company, that's B, owned, hired, or borrowed. Well, that's in the alternative, isn't it? Well, that is in the alternative where you have a vehicle that qualifies under symbol number 8 as a hired auto, which is one that is owned, hired, or borrowed. So the only way we get away from you being Anderson Trust Company in operating a non-owned auto is if we look to the ultra endorsement subparagraph F, which extends coverage for driving non-owned autos to any employee of yours while acting in the course of your business or personal affairs while using a covered auto. You do not own, hire, or borrow. Well, how do you get past, I'm still perplexed how you get past number 1A, U for any covered auto, a covered auto under the declaration. We get back, and the U is limited to the name insured. Okay. Brian Anderson is not a U. He doesn't fall within the definition of the name insured Anderson Trust Company. And in order to extend that so that it would cover any employee, subparagraph… Where do you see the word employee? In subparagraph F, and any employee of yours which would be Anderson Trust Company while acting in the course of your business or your personal affairs while using a covered auto, you do not own, hire, or borrow. You've got to have an insured within the definition of insured in the policy in order for there to be coverage. The one way is you've got a covered auto because this was a non-owned auto within symbol number 9. But you can't get off the ground until you've got an insured as insured is defined under the policy. If I just look, though, at 1A, it says U, the insurance company, you're being covered. U is Anderson Trust Company. Anderson Trust Company is not being sued here. Anderson Trust Company is not the defendant in as much as counsel wants to throw us over and say we're arguing respondeat superior. He's arguing a coverage case. He's the one who is missing the point. We are not arguing a respondeat superior case. We are arguing a coverage case dealing with the definitions in the policy. And the definition of U is limited to Anderson Trust Company. It doesn't involve Ryan Anderson on January 10th of 2010 as he returns home from a church, albeit a tragic accident. This policy was not written to cover Ryan Anderson as an insured. If he was an employee, potentially, then we would focus on the respondeat superior considerations as to the course of employment. And we would look at personal affairs. And I think, as the Court is well aware, the term personal affairs has a long genesis in the history of Illinois court law, where the family would send the son out in the family car to go to the grocery store, and it was called a personal errand. And if they were sending him out on an errand, then there could be coverage under the policy because he was acting on their behalf. That's what personal affairs means. Well, basically, I mean, your argument is there's an underlying lawsuit here, and that lawsuit is Holmes v. Ryan Anderson. Exactly. Okay. And this is a separate declaratory judgment action to determine whether or not Addison Insurance Company has an obligation to defend and indemnify Ryan Anderson. Exactly. In that lawsuit. Exactly. If it was Anderson Trust Company, we wouldn't even be – if Anderson Trust Company was the defendant, we wouldn't even be here, right? Because if they were being sued, you'd have to go in and defend it. That's right. We would be defending them, but the argument would still exist as to whether at the time coming home from church this employee was in the course of a business in the order of personal affairs. Then we would be looking at what are the personal affairs and so forth. Right. But we don't reach that point yet. If Ryan Anderson was an employee acting within the scope of his employment for Anderson Trust Company at the time of this accident, there wouldn't be any issue. There wouldn't be any issue. He'd be covered. And the reason you get into the respondeat superior argument, you're basically saying he's only an insured if there's some kind of a respondeat superior. No, really. Or who's working for Anderson Trust Company. Really. That's how you get into that. It is, and counsel started out saying, I'm going to make a procedural error. I'm going to argue their case and point out why it doesn't apply. Any appellate lawyer is going to look at it and say, I'm going to cover all of the bases. So in covering all of the bases, we start out certainly that he is not an insured within the policy. Then secondly, we have to deal with the language as the court is positing. If we say hypothetically that he could be considered an insured because he was an employee, then we have to look at personal affairs and we have to look at a course of business. And then we wouldn't be arguing where we're returning from. But church is a personal affair, and that's when we get into Wolfensberger versus Eastman. And in Wolfensberger, he was an employee, and they were dealing with subparagraph F here. And they were arguing that personal affairs, there, this drunken frolic, this could be considered personal affairs. And the court said, no, we've got to interpret the policy in Perry materia to say that the language course of business or personal affairs are read together. It must be in the furtherance of the name insured business or personal affair. OK, now, now, let me just continue here with my line of thinking. As I understand Mr. Doris's argument, what he's saying is you can't square this number nine non-owned auto's covered auto definition and all the people it includes with the definitions of who is an insured. And a reasonable person would read this and conclude that if I'm driving a non-owned auto and I'm a member of the household of the president of the company involved in personal affairs, I'm covered. Because, you know, it, this definition goes into all this about members and members of household and business and personal affairs and all that. And you really, it is difficult to square what all that has to do with anything if you read who is an insured. Because, I mean, I'm having a hard time understanding why the insurance company would write all this language in here. I am waiting for the moment to lead you to the lot. OK, go ahead. OK. In looking at the language, and here's where the counsel is disingenuous and misleading, look at number nine. It doesn't say operated by a partner, a member, members of their household. It says in defining a non-owned automobile, this includes auto's what? Not operated, auto's owned by your employees. OK, that would be Lloyd Anderson. No, no. Just a minute. But it goes on to say, but only while used in your business or your personal affairs. So we get into, you know, under what circumstances and who is using it, which really goes more to like who is an insured language. You understand what I'm saying? Why in defining what a covered auto is do we get into this members of household? OK, well, we've got to, as we look at the language of the policy grammatically, owned by whom? Members of the household, members or partners. Now, that qualifies the vehicle. Then you go on to say, is the vehicle being used in the business of the named insured or the personal affairs of the named insured? Only where you have both the ownership by one of those individuals and its use in the business of the named insured can it qualify as a non-owned auto. If it qualifies as a non-owned auto, then you come down to the insuring agreement, which limits the insurance company's obligation to pay to sums an insured legally must pay. Here the defendant in any sums that the defendant may be obligated to pay is a Ryan Anderson. What would be an example of a personal affair of Anderson Trust? Well, first of all, the way that the policy is written, and we point this out in our brief, it is a business auto policy. Businesses include the corporations, partnerships, proprietorships. Assume that this was a proprietorship owned solely by Boyd Anderson, and Boyd Anderson said to his son, an employee, run up and get me a legal pad. And while his son is up getting the legal pad because the father's to take that home, the mother wants him to bring home a legal pad, the accident occurs. That is the personal affair. That is the personal affair of the trust company? The personal affair of the proprietor who owns the trust company because these policies... But your policy, your whole argument is the word you and your relate only to Anderson Trust Company. And if I extend your argument, then your, in Section 9, would be only Anderson Trust Company. How does it have a personal affair? Anderson Trust Company has the personal affair. The court said in Wolfersberger that you have to read these together, the business and the personal affairs, because it was written there to trigger potential vicarious liability or respondeat superior exposure. Now, let's make the assumption... But Wolfersberger was remanded, right? And it was remanded for, on the declaratory judgment that happened here. There was no finding by the court here. There was a genuine issue of material fact as to whether the driver was acting within the scope of his employment. And that was where the driver was an employee. I understand. You can't get there without having Ryan Anderson fall within the definition of an employee. Now, if we take personal affairs and giving counsel to you and say, boy, that's goofy. Nobody understands that. That's ambiguous. That still doesn't get them to coverage because you can't simply because there's an ambiguity in a policy, and the ambiguity doesn't bear any relationship to the circumstances of the occurrence, say that it is interpreted to mean that there is coverage. I think as we point out in the brief, coming home from church, how could that be a personal affair of anybody other than Ryan Anderson? Unless, of course, he had been sent to church to pray for the affairs of the company. Now, this case was heard on the cross motions for summary judgment. Judge Bleier found that they had no evidence, no credible evidence, that Ryan Anderson was an insurer because they couldn't show that he was an employee. The admissions by counsel are that he was not an employee. I still don't see in the policy where you have to be an employee. Well, you have to be an insurer. And in order for there to be coverage for non-owned autos, you have to come to subparagraph F under the definition of who is an insurer. And that starts out any employee of yours while acting in the course of your business or personal affairs while using a covered auto. Excuse me, let me ask a question. Because we've covered what you just are about to say, we know that's there. Look at the face sheet of the policy, okay? The face sheet of the policy shows item two, schedule of coverage and covered autos. And it says this policy provides only those coverage where a charge is shown in the premium column below. Each of these coverages will apply only to those autos shown as covered autos below. And then it shows liability, covered auto symbol 789, $1 million, and it shows a premium, okay? Could a reasonable person look at that and think, if I'm in a covered auto, I have liability coverage of $1 million? I will do that. And we have cases. They're mostly stacking cases from Bruder and others that talk about stacking if it shows a premium. And there's some that have that language. But, again, I mean, is there an ambiguity there compared to the rest of the policy? Because it doesn't say here you have to be an insurer and it has to be a covered auto. Go ahead and finish, Jim. Premiums are rated based upon the symbols for the covered autos under the symbols. The coverage extends only under the insuring agreement. And this is the only case that I have ever seen where it is argued that, admittedly, the individual for whom coverage is sought was not an insurer within any definition of the policy. But, nonetheless, there is coverage for them under the policy. You can't get there from here. The VERB can't launch simply on a covered auto way. Thank you very much. Let me ask you a question about something he just said, okay, Mr. Dorsey? I think it's probably true that most of the, if not all of the coverage questions based on insurance contracts that we've had in this district and the Supreme Court's had, there was no issue about the person being an insured, the defendant and the underlying. What about that? Your Honor, the insured is not just – now, this might be too simplistic, but I think it's accurate. An insured is just not a listed, named insured. It can go beyond – it can include, for example, permissive users. And permissive users are insured all over the ball yard every day of the week. They're not listed insured. But the policy says under certain circumstances these people are covered. They, therefore, become insured under the policy. They're not named insured. And what he's saying is you have to go to the definition in the policy to determine who can be an insured. Well, as Justice Cates points out, the policy starts out as you in an insured – in a covered vehicle. Not all vehicles are covered. You, as Anderson trusts, a corporation can only act through its people. And in this case, the argument is that Boyd Anderson is being covered, the president is being covered, for his personal affairs. And he allowed his son to drive this – his vehicle, which is an automobile. The box, Assembly 9 box, clearly says that this includes, not as limited to, but this includes autos owned by employees, by partners, by members, by decision makers within the company. A corporation can only – a corporation obviously can't drive the vehicle. There would be no coverage at all of that if we use the interpretation he is championing. Because a corporation can't drive. It's got to be a member, an employee, a president, and that's exactly what's going on here. So that makes him covered. That makes him insured. I wanted to point out, when they argue about this subparagraph F, where they try to add that on any employee of yours while acting in the course of your business, that is under an endorsement. It's under broad liability coverage. It does not negate the language that Justice Cates pointed out, which is the introductory language about you in a covered auto. You as a corporation – a corporation has to act for its people. Boyd Anderson isn't people. This is a covered auto, clearly a covered auto. It's an automobile, you know, not owned by a corporation. So we have to go to this box. It is reasonable to go to this box. It takes someone of experience and eloquence of that man to talk 20 minutes to try to unravel all this. But it's still so confusing. It is a confusingly configured policy, confusingly worded. I can go to this box right here and say the president lets his son, a household employee, drive that vehicle – a household member drive that vehicle for his personal affairs, not in business and personal, but in business for personal affairs. It clearly fits under this definition. But getting back to that subparagraph F, that says it's broad liability coverage. It doesn't negate subparagraph A, which is what we fall under. And it says that that subparagraph F says who is an insurer who is amended to include the following. It doesn't amend and take away subparagraph A. So I think we're an insurer. I think corporations have to act through its people. I think personal affairs is not defined. I think any reasonable reading would include allowing us to do that, to allow our children to drive. That's a personal affair. So I think we're expressly covered, but at best this is a confusing morass. And insurance companies should have to provide coverage when they attempt to exclude liability and coverage based upon confusion. Thank you. Just for the record, gentlemen, Mr. Miller, you made a statement that Mr. Dorris had been disingenuous. And from my perspective at least, I found nothing in Mr. Dorris' argument that was disingenuous. And that kind of criticism of attorneys, at least in my view, should not be forwarded to us in the appellate court. Thank you. Thank you, gentlemen. This matter will be taken under advisement and an order will be issued in due course. Thank you very much.